IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD REMUS,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    No. 05 C 1495
                                        )
MICHAEL SHEAHAN, Sheriff of             )
Cook County, Illinois, in his           )
individual capacity, COOK COUNTY        )
SHERIFF'S DEPARTMENT, JAMES             )
RYAN, individually, COUNTY OF           )
COOK, a unit of local government,       )
JOHN STROGER, individually, and         )
COOK EMPLOYEES' AND OFFICERS'           )
ANNUITY AND BENEFIT FUND,               )
                                        )
            Defendants.                 )

## **MEMORANDUM OPINION AND ORDER**

In this case, plaintiff Richard Remus, a former
superintendent at the Cook County Jail, complains that he was
constructively discharged from that position in retaliation for
exercising First Amendment rights of free speech.  Plaintiff
also complains that certain of the defendants interfered with
his access to a court in that their interference with an
investigation of a prisoner's complaint of improper force
prevented plaintiff from pursuing certain legal claims.  Named

as defendants in plaintiff's Second Amended Complaint (the "SAC")
are Cook County Sheriff Michael Sheahan,[1] Cook County Sheriff
Director of Operations James Ryan,[2] and the Cook County Sheriff's
Department.[3] Also named as defendants are Cook County Board of
Commissioners President John Stroger;[4] the Cook County Employees'
and Officers' Annuity and Benefit Fund (the "Fund");[5] and Cook
County.[6] All the defendants have moved to dismiss[7] the Second

---

[1]Unlike the prior pleadings, the SAC names each
individual in his individual capacity only. This avoids the
redundancy that previously existed when the individuals were sued
in their official capacities and the governmental entities were
also named as defendants.

[2]Ryan is not currently in this position, but was at times
relevant to plaintiff's claims. Presently, Ryan is a judge of
the Circuit Court of Cook County, Illinois.

[3]All three of these defendants will collectively be
referred to as the "Sheriff Defendants." Michael Sheahan in his
individual capacity will be referred to as "Sheahan." The Cook
County Sheriff's Department will be referred to as the
"Department." Collectively, Sheahan and the Department (in other
words, Sheahan in his individual and official capacity) will be
referred to as the "Sheriff."

[4]The original complaint named James Stroger. The Clerk
of the Court will be directed to amend the docket accordingly.

[5]The original complaint named the Cook County Pension
Board. The Clerk of the Court will be directed to amend the
docket accordingly.

[6]Collectively, these three defendants will be referred to
as the "County Defendants."

[7]To the extent an argument made by one defendant would
also be applicable to another defendant, that argument will be
considered as to all pertinent defendants.

Amended Complaint, which contains two counts.[8] Count I is the
First Amendment claim and is made against all defendants.
Count II is the access to court claim and is made against the
Sheriff Defendants and Cook County.

On a Rule 12(b)(6) motion to dismiss, a plaintiff's
well-pleaded allegations of fact are taken as true and all
reasonable inferences are drawn in the plaintiff's favor.
Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page,
291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers
Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need
not set forth all relevant facts or recite the law; all that is
required is a short and plain statement showing that the party is
entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Ouranic
Literacy Institute, 291 F.3d 1000, 1008 (7th Cir. 2002);
Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert.
denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d
950, 951 (7th Cir. 1999). A plaintiff in a suit in federal court
need not plead facts; conclusions may be pleaded as long as the

---

[8]Plaintiff has moved to strike materials and arguments
contained in the reply of the Sheriff [Docket Entry 63],
contending new arguments are improperly included in the brief and
materials outside the SAC are relied upon. While some of those
arguments are well taken, no portion of the reply will actually
be stricken. However, no improperly included argument or
materials will be relied upon as a basis for dismissing any
aspect of plaintiff's complaint. The motion to strike will be
denied without prejudice.

defendants have at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). Even if not required to plead specific facts, a plaintiff can plead himself or herself out of court by alleging facts showing there is no viable claim. See Slaney v. The International Amateur Athletic Federation, 244 F.3d 580, 597 (7th Cir.), cert. denied, 534 U.S. 828 (2001); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 669-70 n.14 (7th Cir. 1998), cert. denied, 525 U.S. 1114 (1999); Jackson, 66 F.3d at 153-54. Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Also, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 661 (7th Cir. 2002); Duferco Steel Inc. v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997); Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431

(7th Cir. 1993). When a document may properly be considered, the actual document will override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988). In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 WL 1720030 *8 (N.D. Ill. March 31, 2003). A plaintiff is not bound by legal characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002).

Plaintiff alleges the following in the SAC. He has worked for the Department since December 1990. When he resigned in March 2003, plaintiff was a Superintendent at the County Jail. The SAC contains no allegations describing the nature of that position.

In 1999, plaintiff was elected to the Fund's Board. The opponent that he defeated was the "godson" of defendant Stroger. Plaintiff alleges that, as a member of the Board, he opposed alleged mismanagement, waste, and abuse of the pension system; worked to improve pension benefits for County employees; and proposed legislative reform. These efforts included expressing criticisms of Stroger and other members of the Board. Stroger and Sheahan both opposed plaintiff's efforts. In October 2002, plaintiff was elected to a second term on the Board. In response to plaintiff's efforts, Stroger told Sheahan that he wanted "Remus gone." The date of this conversation is not alleged, but it is implied that this conversation took place after the October 2002 election.

In Fall 2002, Ryan, acting at the direction of and with the knowledge of Sheahan, directed plaintiff to donate $1,500 to Sheahan's reelection campaign. Plaintiff refused and Ryan followed up with further requests emphasizing that a donation was mandatory. Plaintiff was informed he would lose his job if he did not donate to the campaign. Plaintiff eventually donated

$1,000. Additionally, it is alleged that Ryan and Sheahan criticized plaintiff for actively supporting political activities and campaigns that they opposed. It is generally alleged that Ryan and Sheahan "set out to retaliate against Plaintiff for these activities." SAC ¶ 32.

In 1999, Cello Pettiford and other Cook County jail detainees alleged that, on February 24, 1999, they had been subjected to improper force, including beatings. Plaintiff was alleged to be one of the perpetrators. Plaintiff denied the allegations and requested that Ryan ensure a proper and full investigation. Plaintiff alleges that his reasons for this request included ensuring that he would be able to defend himself against these allegations, preserve his reputation, and have full access to the courts in defending himself or pursuing related claims of his own. He also alleges that he was motivated by a desire to preserve the integrity of the Department and the other accused officers; to protect the reputations and livelihoods of the other accused officers; and to ensure the other accused officers would be able to defend themselves in the event of any disciplinary action. SAC ¶ 34.

It is further alleged that Ryan told the assigned investigator to "get rid of" and drop the internal investigation. SAC ¶ 37. In June or July 1999, Ryan suspended the investigation. After substantial delay, an investigation was

completed in early 2003, but it allegedly was "inadequate, inaccurate, incomplete, and improperly biased based on the conduct of the investigator." Id. ¶ 39. Allegedly, Sheahan and Ryan directed that evidence be destroyed and other evidence was "lost and became stale." Id. A complete investigation allegedly would have completely exonerated plaintiff. It is alleged that Ryan's and Sheahan's delay and obstruction of the internal investigation "depriv[ed] Plaintiff of valuable information necessary to prove his innocence, vindicate the integrity of all officers involved, and to respond to the allegations in court. Defendants' actions deprived Plaintiff of his ability to bring any claims against the inmates who were making these false allegations against him for potential claims and causes of action including defamation, abuse of process, and malicious prosecution." Id. ¶ 38. Plaintiff claims that this failure to conduct a proper internal investigation revealing the facts forced him to settle the lawsuit that Pettiford had brought against him and others. This settlement included a mutual release of claims and was entered into in early March 2005.[9]

_____

[9]Plaintiff does not provide a copy of the settlement agreement itself. Defendants have provided a copy, which may properly be considered on a Rule 12(b)(6) motion in that the existence of the document is alleged in the complaint and is central to the allegations. Under the terms of the settlement, which settled Pettiford v. Sheahan, No. 02 C 1777 (N.D. Ill.), only the County was obliged to pay any monetary settlement. Consistent with the allegations of the SAC, plaintiff released any claim he might have had against Pettiford. Remus did not

- 8 -

Plaintiff also alleges that the improper investigation prevented him from being able to bring a defamation claim against Ryan and Sheahan.

It is further alleged that Ryan and Sheahan obstructed the investigation because they believed that Sheahan's political interests would be harmed by a full investigation regardless of whether the findings would exonerate jail personnel regarding the February 1999 incident. When information from the investigation was selectively leaked to the media, there was substantial media coverage about the alleged beatings and an alleged coverup by the Department. Plaintiff alleges that Ryan and Sheahan tried to make plaintiff the scapegoat to deflect attention from their roles in covering up an investigation.

On March 21, 2003, Ryan, at Sheahan's direction, forced plaintiff to resign and backdate the resignation to March 14, 2003. This forced resignation allegedly was motivated by a continued attempt at covering up the February 1999 incident; Stroger's directive to get rid of plaintiff; plaintiff's activities to reform procedures at the Fund; retaliation based on plaintiff's opposition to donating to Sheahan's campaign and plaintiff's work on behalf of others; and for refusing to lie about the February 1999 incident and coverup activity.

release any claim he might have had against any of his codefendants in the Pettiford case.

In a conclusory manner, it is alleged that "[d]efendants have a pattern, custom, and practice of retaliating against individuals in violation of the First Amendment to the United States Constitution based on political affiliations and for speaking out about matters of public concern." SAC ¶ 55. It is alleged that the Sheriff Defendants "have maintained a pattern and practice of covering up complaints and conducting incomplete and bad faith investigations that were devised to 'make the Sheriff look good' as opposed to determining the truth and providing effective remedial measures." Id. ¶ 56. It is also alleged that Sheahan is the final policymaker for the Department. It is further alleged that Sheahan delegated final policymaking duties to Ryan. Stroger is alleged to be the final policymaker for the County. Although not stated in the SAC, in a responsive brief, plaintiff claims that Stroger, as County Board President, is also the President of the Fund's Board and therefore a Fund policymaker.

With substantial restrictions and exceptions, the First Amendment (as applied to the states through the Fourteenth Amendment) provides that public employees have the right to speak out on matters of public concern and to engage in political activities without being retaliated against or penalized by their employer or supervisors. City of San Diego, Cal. v. Roe, 543 U.S. 77, 125 S. Ct. 521, 523-26 (2004); Riley v. Blagojevich,

425 F.3d 357, 359 (7th Cir. 2005); Fuerst v. Clarke, 389
F. Supp. 2d 1042, 1050-51 (E.D. Wis. 2005); Steigmann v.
Democratic Party of Ill., ___ F. Supp. 2d ___, 2005 WL 3482635
*4-5 (N.D. Ill. Dec. 20, 2005). A public employee's First
Amendment retaliation claim must be based on speech that was a
matter of public concern. San Diego, 125 S. Ct. at 525;
Gustafson v. Jones, 290 F.3d 895, 906 (7th Cir. 2002). That
speech must play a substantial part in the adverse action taken
against the employee. Id. If those two elements are proven, a
balancing test is then applied in which the defendant has the
burden of showing that the state's interest, as an employer, in
promoting the efficiency of public services outweighs the
employee's interests in commenting on matters of public concern.
San Diego, 125 S. Ct. at 524-25; Gustafson, 290 F.3d at 906.
Since this is an affirmative defense of the defendant, the
balancing test generally cannot be applied on a motion to
dismiss. Delgado v. Jones, 282 F.3d 511, 517 (7th Cir. 2002),
cert. denied, 543 U.S. 925 (2004); Klug v. Chicago School Reform
Board of Trustees, 197 F.3d 853, 859 (7th Cir. 1999). Another
limitation on a public employee's right to speak out on matters
of public concern is that employees in policymaking positions
generally cannot complain about being fired based on political
affiliation, speech implicating political viewpoints, speech
critical of superiors, or speech critical of or in opposition to

work-related policies of the employer. Riley, 425 F.3d at 359; Kiddy-Brown v. Blagojevich, 408 F.3d 346, 359 (7th Cir. 2005); Vargas-Harrison v. Racine Unified School District, 272 F.3d 964, 971, 973-74 (7th Cir. 2001), cert. denied, 537 U.S. 826 (2002); Fuerst, 389 F. Supp. 2d at 1055-56; Steigmann, ___ F. Supp. 2d at ___, 2005 WL 3482635 at *5.

Here, plaintiff alleges three possible categories of speech upon which his retaliatory, constructive discharge allegedly was based: (a) plaintiff's reform activity with the Fund; (b) plaintiff's support for other political campaigns and his reluctance to support Sheahan's reelection campaign; and (c) plaintiff's noncooperation with the alleged coverup of the February 1999 jail incident. All of these involve either matters of political affiliation or criticism or opposition to work-related policies of the Sheriff and County. Therefore, if plaintiff was in a policymaking position, this expression was not protected and no defendant could be liable for discharging plaintiff because of this expression. See Riley, 425 F.3d at 359; Kiddy-Brown, 408 F.3d at 359; Vargas-Harrison, 272 F.3d at 971, 973-74; Fuerst, 389 F. Supp. 2d at 1055-56. Ryan argues that plaintiff is in a policymaking position. The complaint, however, contains no information about plaintiff's job duties other than the job title itself. On the pleadings alone, it cannot be held that plaintiff is in a policymaking position. See

- 12 -

Kiddy-Brown, 408 F.3d at 355-56; Milazzo v. O'Connell, 108 F.3d 129, 132 (7th Cir. 1997); Riley, 425 F.3d at 364.

Although, on the pleadings, it cannot be held that plaintiff was in a policymaking position that is exempt from certain First Amendment protections, there is a substantial possibility that he is in such a position. Cf. Riley, 425 F.3d at 362-64 (assistant warden of operations and assistant warden of programs at state correctional facilities were policymaking employees).[10] As is discussed below, Count I (in part) otherwise survives today's ruling. The question of whether Count I should be dismissed in its entirety because plaintiff was a policymaking employee should be promptly resolved. It is doubted that much discovery, if any, is required on this issue. Although this bench generally will not consider summary judgment motions prior to the completion of all discovery, it would consider a properly supported summary judgment motion on this issue if defendants genuinely and reasonably believe it would resolve Count I in its entirety and they promptly bring such a motion. Prior to

---

[10]In the Fourth Amended Complaint filed in Pettiford, it is alleged that plaintiff was Superintendent of the Department of External Operations, responsible for training and supervising the personnel in that department, including the Special Operations Response Team ("SORT"). In his answer to that pleading (which is appended to Ryan's brief [Docket Entry 31]), Remus admitted that he held that position at times and that this department included SORT, but otherwise denied the allegation. For present purposes, this allegation cannot be assumed to be true. However, it is further indication that plaintiff may have been in a policymaking position at the time his employment was terminated.

- 13 -

bringing such a motion, defendants should meet with plaintiff concerning any discovery he seeks on the issue and promptly provide any necessary materials. If possible, the parties should reach a stipulation as to all or most facts pertinent to the determination of whether plaintiff was in a policymaking position at the time his employment ended. Possibly, the parties could stipulate that the job description for plaintiff's position accurately described the position and the issue could be resolved based on the job description. Cf. Riley, 425 F.3d at 364; Steigmann, ___ F. Supp. 2d at ___, 2005 WL 3482635 at *9-10.

Defendants argue that Count I also fails because plaintiff has not alleged that he was speaking out on a matter of public concern. In determining whether there was speech on a matter of public concern, the "content, form, and context of a given statement" is examined in light of the entire record. San Diego, 125 S. Ct. at 525 (quoting Connick v. Myers, 461 U.S. 138, 146-47 (1983)); Wernsing v. Thompson, 423 F.3d 732, 751 (7th Cir. 2005). Content is the most important of these three factors. Wernsing, 423 F.2d at 751; Carreon v. Illinois Department of Human Services, 395 F.3d 786, 791 (7th Cir. 2005). "[C]ases make clear that public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication. The [Supreme] Court has also recognized that

- 14 -

certain private remarks, such as negative comments about the President of the United States, touch on matters of public concern . . . ." San Diego, 125 S. Ct. at 525-26. The public concern element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee. Connick, 461 U.S. at 146; Wernsing, 423 F.3d at 751 (quoting Sullivan v. Ramirez, 360 F.3d 692, 699 (7th Cir. 2004)); Gustafson, 290 F.3d at 906-07.

Although defendants make arguments based on allegations being conclusory, plaintiff failing to allege sufficient facts to draw sufficient inferences or prove elements of the claim, and other similar arguments, those arguments are misplaced on a Rule 12(b)(6) motion to dismiss. No heightened or special pleading standard applies to a constitutional claim. Swierkiewicz, 534 U.S. at 513; Leatherman, 507 U.S. at 168; Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). Plaintiff need not plead evidence; he need only plead enough to adequately inform defendants of the claims against them. Higgs, 286 F.3d at 439; Carpanzano v. College of DuPage, 2003 WL 22889432 *3 (N.D. Ill. Dec. 8, 2003); Farrar v. City of Chicago, 291 F. Supp. 2d 747, 752 (N.D. Ill. 2003). Defendants often cite cases involving summary judgment rulings and mistakenly incorporate summary judgment proof standards into their arguments on a motion to

- 15 -

dismiss. Cf. Gustafson, 290 F.3d at 907; Singleton v. Chicago School Reform Board of Trustees of City of Chicago, 2002 WL 2017082 *8 n.7 (N.D. Ill. Sept. 3, 2002).

Clearly, plaintiff running for and being on the Fund's Board and taking positions regarding public employees' benefits and waste and fraud in the system involves speech on matters of public concern. Plaintiff's reluctance to donate to Sheahan's reelection campaign and his activity on behalf of other candidates for public office is also speech on matters of public concern. The content of both those subjects are of concern to the community and the form and content of this speech was in the public arena.

Properly investigating and dealing with complaints of prison abuse is a subject matter of public concern. See Schopmeyer v. Plainfield Juvenile Correctional Facility, 2002 WL 31255466 *8 (S.D. Ind. Sept. 17, 2002); Lewis v. Delaware County, 109 F. Supp. 2d 406, 411 (E.D. Pa. Aug. 23, 2000). The question is whether the form and context of plaintiff's speech on that subject makes it speech on a matter of public concern. While plaintiff alleges that the February 1999 incident received much media attention, he does not allege that he spoke to the media about the incident or that any such speech motivated his discharge. Plaintiff's alleged speech on this subject is limited to speaking to Ryan about conducting a full and proper

- 16 -

investigation.[11]  Plaintiff's alleged motivations for this
request fall into three general categories:  (a) protecting
himself; (b) protecting the other officers involved; and
(c) preserving the integrity of the Department.  See SAC ¶ 34.
Where an employee's speech is limited to a nonpublic conversation
with a supervisor and is motivated entirely by personal and
internal concerns, it generally will not be speech on a matter of
public concern.  See Gustafson, 290 F.3d at 908.  It does not
become a matter of public concern because the employee is
attempting to protect fellow employees, not just himself.  See
Carreon, 395 F.3d at 795.  While the allegations indicate self-
interest and internal concerns were plaintiff's primary
motivations, he also alleges being motivated by an interest in
protecting the integrity of the Department.  SAC ¶ 34(a).
Gustafson, 290 F.3d at 908, emphasizes that motivation being
determinative is limited to situations where personal concerns
are the only motivation.  Here, plaintiff alleges a non-private
motivation as well.  Therefore, the alleged motivation is not, by
itself, dispositive.  See Colburn v. Trustees of Indiana
University, 973 F.2d 581, 586-87 (7th Cir. 1992).

---

[11]Plaintiff also alleges that Ryan and Sheahan were
motivated by their expectation that plaintiff would not lie about
having requested a full investigation.  SAC ¶¶ 47, 53.
Plaintiff, however, does not allege that he actually spoke out
about there being a coverup.  The retaliation claim cannot be
based on speech that never actually occurred.  See Wernsing,
423 F.3d at 752-53.

Although not dispositive, plaintiff's motivation is still relevant to assessing the character of his statements. Id. "[W]here the overriding reason for the speech is the concerns of a few individuals whose career may be on the line, the speech looks much more like an internal personal dispute than an effort to make the public aware of wrongdoing." Id. at 587. Here, a close look at the facts alleged by plaintiff show that he was not actually speaking out on a matter of public concern. Plaintiff alleges that, in June or July 1999, he requested a full internal investigation of the February 1999 incident. He does not allege that, before he was discharged, he again spoke to Ryan, Sheahan, the media, or anyone else about the subject. As of July 1999, Pettiford had only made internal complaints about the incident; he did not bring suit until a number of years later. Plaintiff only spoke to Ryan and was only requesting an internal investigation as to what happened. Plaintiff was not attempting to raise a public debate regarding how County Jail inmates should be treated or even regarding how incidents should be investigated, nor was he trying to bring any wrongdoing to the public's attention. See id. at 587-88. A request for a review or investigation that is not accompanied by an expressed view that wrongdoing of public concern has occurred is not itself speech on a matter of public concern. Wernsing, 423 F.3d at 752-53; Colburn 973 F.2d at 586. Plaintiff's request to Ryan

- 18 -

that Ryan order a full internal investigation was not speech on a matter of public concern. Further consideration of Count I will be limited to the other two categories of speech alleged: reform activity at the Fund and political campaign activity.

Defendants also contend that plaintiff has not adequately alleged a causal relationship between his speech and being asked to resign. Plaintiff, however, was not required to allege a chronology of events from which it can be inferred that his speech motivated defendants to request his resignation. Higgs, 286 F.3d at 439. It is sufficient to conclusorily allege that defendants requested his resignation because of his speech. Id. See also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Plaintiff has adequately alleged that Sheahan and Ryan intentionally retaliated against him because of plaintiff's speech regarding Fund reforms and political campaigns and that Stroger intentionally retaliated because of plaintiff's speech regarding Fund reforms.

Defendants argue that Count I fails because plaintiff has not alleged an adverse employment action nor sufficiently alleged a constructive discharge. Contrary to Ryan's contention, an "adverse employment action" is not an element of a First Amendment retaliation claim. All that is required is an adverse action, not necessarily one that affects the plaintiff's

- 19 -

conditions of employment. Power v. Summers, 226 F.3d 815, 820
(7th Cir. 2000); Berry v. Illinois Department of Human Services,
2003 WL 22462547 *11 (N.D. Ill. Oct. 29, 2003), aff'd, Carreon,
supra. See also Mosely v. Board of Education of City of Chicago,
434 F.3d 527, 533-34 (7th Cir. 2006). There need be some form of
retaliatory conduct that is sufficiently adverse to deter the
exercise of an employee's First Amendment rights. Power, 226
F.3d at 820-21; DeGuiseppe v. Village of Bellwood, 68 F.3d 187,
192 (7th Cir. 1995); Berry, 2003 WL 22462547 at *11. It "must be
sufficiently adverse to present an actual or potential danger
that the speech of [the plaintiff] will be chilled." DeGuiseppe,
68 F.3d at 191. Stated another way, the adverse action inflicted
must be "likely to chill a person of ordinary firmness from
continuing to engage in that activity." Bloch v. Ribar, 156 F.3d
673, 678 (6th Cir. 1998). Here, plaintiff has alleged that he
was requested to resign. That is sufficient to satisfy the
adverse action requirement even if plaintiff had not thereafter
resigned. See Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.
1989); Muller v. Conlisk, 429 F.2d 901, 903 (7th Cir. 1970);
Mosely, 434 F.3d at 534; Lloyd v. City of Bethlehem, 2004 WL
540452 *12 (E.D. Pa. March 3, 2004).

        The Sheriff contends that the allegations that plaintiff
was forced to resign are inconsistent with plaintiff's
resignation letter. Plaintiff refers to the resignation letter

- 20 -

in the SAC, but does not attach it. The Sheriff provides a copy
of the letter. Since the resignation letter is not central to
the SAC, it may not properly be considered on a motion to
dismiss. But even if it could be considered, it would not affect
the outcome at this time. The Sheriff points to no reason why
the contents of the letter would be binding on plaintiff. To the
extent it was contrary to an allegation in the SAC, it would
merely be conflicting evidence, not a conclusive and binding
allegation of fact. In any event, the letter is not inconsistent
with the allegation that defendants requested plaintiff's
resignation in retaliation for his prior speech.

Contrary to Sheahan's argument, plaintiff has
sufficiently alleged that Sheahan was personally involved in the
decision to request plaintiff's resignation, that Sheahan knew of
the pertinent speech of plaintiff, and that Sheahan was motivated
by retaliation for plaintiff's speech.

The Department argues that its liability is not
sufficiently alleged. It is sufficient that plaintiff
conclusorily alleges that all defendants had a custom or practice
of engaging in retaliation based on political affiliation and
speech on matters of public concern and that the alleged
misconduct in this case was pursuant to official policy or
custom. Leatherman, 507 U.S. at 165-66; McCormick v. City of
Chicago, 230 F.3d 319, 324-25 (7th Cir. 2000); Akpulonu v.

McGowan, 2004 WL 2034084 *13 (N.D. Ill. Aug. 12, 2004); McNeal v. Cook County Sheriff's Department, 282 F. Supp. 2d 865, 868-69 (N.D. Ill. 2003).

The County argues that it cannot be held directly liable based on the official liability of the Sheriff. That is correct because the Department is a separate entity from the County. Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir. 1989), cert. denied, 495 U.S. 929 (1990); Wallace v. Masterson, 345 F. Supp. 2d 917, 927 (N.D. Ill. 2004). Contra Hernandez v. County of DuPage, 1997 WL 598132 *8 (N.D. Ill. Sept. 19, 1997). But even if the only defendant in the case were the Sheriff in his official capacity, the County would remain in the case as a necessary party based on its obligation to indemnify official capacity claims against the Sheriff. Carver v. Sheriff of LaSalle County, Ill., 324 F.3d 947, 948 (7th Cir. 2003); Wallace, 345 F. Supp. 2d at 928. As is discussed below, the County also remains in this case based on the conduct of Stroger.

Stroger, the County Board President, also contends that he cannot be directly or vicariously liable for actions of Department employees because the Department is a separate entity from the County. That is correct. Stroger, however, does not address whether he can be held liable for his own conduct. It is alleged that Stroger instructed Sheahan to get rid of plaintiff because of plaintiff's activity with the Fund's Board and that

Sheahan complied. On that basis, Stroger can be held personally liable. It is undisputed that Stroger is a final policymaker of the County and it is alleged that his conduct was an official action and a custom or practice of the County. Stroger and the County remain in Count I to the extent Count I is based on plaintiff being discharged in retaliation for his reform activity at the Fund. To the extent Count I is based on retaliation for plaintiff's participation in political campaigns and reluctance to participate in Sheahan's reelection campaign, that aspect of the claim is not against Stroger individually and the County remains only on the basis of its obligation to indemnify. Stroger and the County will not be required to provide any discovery that concerns only the latter aspect of Count I. See Wallace, 345 F. Supp. 2d at 926-27.

Although not expressly alleged in the SAC, plaintiff contends that the basis of the Fund's liability is that Stroger's conduct was also in his official capacity as President of the Fund's Board. Since that allegation is consistent with allegations of the SAC, it may be considered even though not included in the SAC. Brokaw, 235 F.3d at 1006; Forseth, 199 F.3d at 368; Albiero, 122 F.3d at 419; Gutierrez, 111 F.3d at 1367 n.2. The Fund contends that Stroger was not the President of its Board. It points to statutes showing that Stroger being President of the County Board does not make him an ex officio

member or officer of the Fund's Board. See 40 ILCS 5/9-185, 188. Stroger, though, is considered a County "employee" eligible to participate in the Fund. See id. 5/9-108(c). As such an employee, he could be one of the elected members of the Fund's Board and one of the Board's officers. See id. 5/9-185(c), 188. The Fund points to no basis for this court taking judicial notice that Stroger was not President of the Fund's Board some time between 1999 and 2003.[12] Presently, plaintiff's allegation must be taken as true. The claim against the Fund will not be dismissed. That claim, though, is limited to being based on retaliation for plaintiff's reform activity at the Fund.

Ryan contends that plaintiff has not adequately alleged that his conduct was under color of state law. Plaintiff has sufficiently alleged that Ryan's conduct was under color of law as a Department administrator.

Ryan contends that plaintiff's claim is untimely, at least in part, because it includes allegations about events that occurred in 1999 and the Fall of 2002. The applicable statute of limitations is two years. Mosely, 434 F.3d at 535. Plaintiff's lawsuit was filed on March 14, 2005. Plaintiff alleges that his resignation was requested and submitted on March 21, 2003, though

_____

[12]Dismissal of the Fund would be considered if the Fund can provide judicial notice documents or a stipulation showing that Stroger was not on the Fund's Board during the pertinent time period.

- 24 -

backdated to March 14, 2003. Plaintiff's principal claim in Count I is that he was retaliated against by being constructively discharged. That claim falls within the applicable statute of limitations. Cf. id. To the extent plaintiff contends any of the prior events are separately compensable misconduct and not merely evidence of the intentions that existed in March 2003, it need not be presently decided whether the statute of limitations would bar any such claim.

Ryan contends that he is entitled to qualified immunity because it was not clearly established in 2003 or earlier that a County Jail Superintendent is not a policymaking employee with more limited First Amendment rights.[13] Government officials are protected from civil liability when performing discretionary functions as long as "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Alvarado v. Litscher, 267 F.3d 648, 652 (7th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). However,

> a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. See Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate:

---

[13]This argument would also apply as to the individual capacity claims against Sheahan and Stroger, but not the official capacity claims against the Department, County, and Fund.

> "[T]he plaintiff is not required initially to
> plead factual allegations that anticipate and
> overcome a defense of qualified immunity." Id.
> As noted in Jacobs' concurrence, "Rule 12(b)(6)
> is a mismatch for immunity and almost always a
> bad ground for dismissal . . . . and when
> defendants do assert immunity it is essential to
> consider facts in addition to those in the
> complaint." Id. at 775 (Easterbrook, J.,
> concurring).

Alvarado, 267 F.3d at 651-52. As was previously discussed, the

minimal facts alleged about plaintiff's position do not show that

he was in a policymaking position exempt from the application of

political and speech criteria. Plaintiff was not required to

allege facts showing that he was in a position that was clearly

established as a non-policymaking position. This qualified

immunity contention is more appropriately raised on summary

judgment. Cf. Kiddy-Brown, 408 F.3d at 356-57. Compare

Steigmann, ___ F. Supp. 2d at ___, 2005 WL 3482635 at *7-11.

As is discussed above, Count I will be dismissed to the

extent it is based on speech concerning the February 1999

incident. Except for indemnification liability against the

County, the claims against the County Defendants are limited to

being based on retaliation for speech concerning plaintiff's Fund

reform activity. Under the conditions discussed above, the court

will consider a separate summary judgment motion on the issue of

whether plaintiff was in a policymaking position when discharged,

- 26 -

including whether qualified immunity would apply to the Count I individual capacity claims.

In Count II, plaintiff claims the Sheriff Defendants denied him his constitutional right to access to a court in that their interference with the investigation of the February 1999 incident interfered with plaintiff's ability to defend against the Pettiford lawsuit and to bring his own claims against Pettiford, Ryan, and Sheahan. An access to court claim can be based on a government coverup that has prevented a citizen from bringing a meritorious claim or that has forced the citizen into an unfavorable settlement. Christopher v. Harbury, 536 U.S. 403, 413-14 (2002). To adequately state such a claim, a plaintiff must allege both (a) the official acts frustrating litigation and (b) the underlying claim that was lost or interfered with. Id. at 415; Orange v. Burge, 2005 WL 742641 *9 (N.D. Ill. March 30, 2005). In support of the latter, the underlying claim must be alleged in a manner that would satisfy Fed. R. Civ. P. 8(a) and a remedy must be stated that would be available on the access to court claim but is no longer available in another lawsuit. Christopher, 536 U.S. at 416-18; Orange, 2005 WL 742641 at *9.

Defendants contend that plaintiff cannot succeed on this claim because, regardless of any coverup, plaintiff would have been a personal participant in the February 1999 incident and therefore fully able to defend himself and pursue his own claims

regardless of any coverup. See, e.g., Cefalu v. Village of Elk Grove, 211 F.3d 416, 423-24 (7th Cir. 2000); Thompson v. Boggs, 33 F.3d 847, 852-53 (7th Cir. 1994), cert. denied, 514 U.S. 1063 (1995). Plaintiff contends he was not present at the February 1999 incident because no such incident occurred and that defendants also destroyed evidence that would have been helpful to his defense. Plaintiff does not identify the evidence that allegedly was destroyed, but is not required to allege such detail in the complaint itself.

To the extent plaintiff alleges defendants simply failed to conduct an adequate investigation, defendants' argument has merit. To the extent a person is aware of sufficient facts to promptly bring a claim or defend a suit, there is no interference with that person's access to the courts. Thompson, 33 F.3d at 852. Regardless of whether any incident occurred or whether plaintiff was even in the jail on the date in question, plaintiff would have been well aware that he had not participated in an improper beating at the jail on that date. He would have known that any contrary allegation by Pettiford was false and therefore any such false allegation potentially supported a claim for defamation, abuse of process, and malicious prosecution. Also, he would have known that any statements by Ryan or Sheahan implicating him in such conduct would potentially support a defamation claim. Whether or not the Sheriff Defendants

- 28 -

conducted an adequate internal investigation, Remus was not
prevented from conducting discovery in the Pettiford suit or any
separate suit Remus might have brought. The failure to conduct
an adequate internal investigation did not interfere with Remus's
access to court.

The alleged destruction of evidence is different. If it
can be shown that defendants destroyed evidence important to
Remus's defense in the Pettiford case or important for supporting
his own testimony that he was not involved in a beating, that
would have interfered with plaintiff's ability to proceed in
court. Prior to the February 1999 incident, the Seventh Circuit
held that the deliberate destruction of evidence that sabotages a
case will support an access to court claim even if the plaintiff
is otherwise aware of the underlying facts. Harrell v. Cook,
169 F.3d 428, 432 (7th Cir. 1999). See also Small v. City of New
York, 274 F. Supp. 2d 271, 279 (E.D.N.Y. 2003). In Harrell, the
Seventh Circuit declined to consider whether the facts of that
case would also support a state law intentional spoliation of
evidence claim because the Harrells would be permitted to
continue with their claim regardless of whether it should be
characterized as a federal access to court claim or a state law
spoliation claim. See Harrell, 169 F.3d at 432-33. At least two
other cases, without any discussion, have held or indicated that
the availability of a state law spoliation claim would preclude

bringing an access to court claim. Orange, 2005 WL 742641

at *10; Swekel v. City of River Rouge, 119 F.3d 1259, 1264

(6th Cir. 1997), cert. denied, 522 U.S. 1047 (1998).

In Christopher, the Supreme Court emphasized that an

access to court claim should not proceed if the plaintiff can

still vindicate his or her rights by pursuing an available state

court remedy. Id., 536 U.S. at 415. The stated justification

for this is that, "[t]here is, after all, no point in spending

time and money to establish the facts constituting denial of

access when a plaintiff would end up just as well off after

litigating a simpler case without the denial-of-access element."

Id. That justification would not apply here. An intentional

spoliation claim, if available, would require essentially the

same proof as plaintiff's federal access to court claim.

The court will not presently dismiss Count II based on an

intentional spoliation claim being available. The Illinois

Supreme Court has not ruled on whether or not there is such a

tort under Illinois law. See Boyd v. Travelers Insurance Co.,

166 Ill. 2d 188, 652 N.E.2d 267, 273 (1995). Federal district

court cases have held that Illinois probably would recognize such

a tort. See Welch v. Wal-Mart Stores, Inc., 2004 WL 1510021 *4

(N.D. Ill. July 1, 2004); Broadnax v. ABF Freight Systems, Inc.,

1998 WL 140884 *4 (N.D. Ill. March 26, 1998); Williams v. General

Motors Corp., 1996 WL 420273 * 3 (N.D. Ill. July 25, 1996). At

- 30 -

least one federal district court case has held or indicated that it would not. See Farrar v. Yamin, 261 F. Supp. 2d 987, 994 (N.D. Ill.), aff'd by unpublished order, 83 F. App'x 840 (7th Cir. 2003). Since neither side has expressly addressed the possible effect of plaintiff having a spoliation claim, the court will not presently resolve that issue.

Defendants contend plaintiff is judicially estopped from alleging any coverup, including destruction of evidence, based on a pleading he filed in Pettiford. In ¶ 46 of his Fourth Amended Complaint, Pettiford alleged that two jail employees, "in concert with others, altered or made incorrect entries in logbooks and records to give the appearance that the SORT unit was not in Division 9 on February 24, 1999 and that there were no incidents to report that day. Also, despite CCDOC's requirement that guards write reports when they use force against detainees, none of the SORT members, including Defendant Remus, wrote reports regarding the February 24, 1999 incident in Division 9. Further, Defendant Edwards and others denied Pettiford and other victims necessary medical care in order to hide the incident." In the following paragraph, Pettiford further alleged: "Defendants operated in concert to try to conceal the February 24, 1999 beatings by SORT members from internal and external investigators and to attempt to keep the internal investigation from reaching resolution." In his answer to that pleading, Remus admitted that

- 31 -

no use of force report was generated, but denied every other allegation of the two paragraphs.

This denial is not a basis for judicially estopping any allegation contained in the SAC. Applying judicial estoppel requires that the present position be "clearly inconsistent" with one successfully taken at a prior time. New Hampshire v. Maine, 532 U.S. 742, 750 (2001); Commonwealth Insurance Co. v. Titan Tire Corp., 398 F.3d 879, 887 (7th Cir. 2004). It is true that, under some circumstances, a settlement can satisfy the success requirement. See Commonwealth, 398 F.3d at 887 & n.5; Kale v. Obuchowski, 985 F.2d 360, 361-62 (7th Cir. 1993). However, to apply judicial estoppel in the situation of a settlement, it still must be shown that the party against whom estoppel is invoked succeeded on the pertinent position, or that the position was somehow a basis for or important to the settlement. See Commonwealth, 398 F.3d at 888; Carnegie v. Household International, Inc., 376 F.3d 656, 660 (7th Cir. 2004), cert. denied, 543 U.S. 1051 (2005) (quoting McNamara v. City of Chicago, 138 F.3d 1219, 1225 (7th Cir.), cert. denied, 525 U.S. 981 (1998)); Sphere Drake Insurance Ltd. v. All American Life Insurance Co., 221 F. Supp. 2d 874, 883 (N.D. Ill. 2002). There is nothing to support or indicate that Remus's and his codefendants' denial of a coverup was in any way important to or a basis for Pettiford agreeing to settle and not demand payments

from any defendant other than the County, apparently the only deep pocket defendant. Judicial estoppel will not be applied.

It still must be considered whether plaintiff has adequately alleged the underlying claims. As to defamation, some district court cases in this circuit have required that the specific defamatory words be alleged while others have required only general allegations as to the nature of the defamatory statements. Compare, e.g., Morris v. Household Mortgage Services, Inc., 350 F. Supp. 2d 786, 788 (N.D. Ill. 2004), and Smith v. Chicago Park District, 1999 WL 33883 *4 (N.D. Ill. Jan. 11, 1999), aff'd by unpublished order, 221 F.3d 1339 (7th Cir. 2000), with Cain v. Elgin, Joliet & Eastern Ry. Co., 2005 WL 1172722 *3-7 (N.D. Ind. May 3, 2005). But even the latter cases require sufficient notice of the alleged statements so as to enable the defendant to respond. See Cain, 2005 WL 1172722 at *7. Here, plaintiff only alleges that he was defamed by false allegations. He has not sufficiently identified those false allegations so as to enable defendants to respond. Count II will be dismissed to the extent it is based on a lost defamation claim.

Defendants contend plaintiff has not adequately alleged that Pettiford committed abuse of process. The elements of an Illinois state law claim for abuse of process are: "(1) an act was done using the legal process that was not proper in the

- 33 -

regular prosecution of such proceedings; and (2) the party doing the act had an ulterior motive or purpose." Cordero v. Calvary SpVI. LLC, 2004 WL 1244107 *2 (N.D. Ill. June 3, 2004). Federal, not Illinois, pleading rules apply to the SAC. Id. Plaintiff alleges that Pettiford's lawsuit was an abuse of process because it was frivolous. A suit being frivolous does not make it an abuse of process; it still must be brought for an improper purpose. See In re Hendrix, 986 F.2d 195, 201 (7th Cir. 1993); Michael Neuman & Associates, Ltd. v. Florabelle Flowers, Inc., 1994 WL 695548 *3 (N.D. Ill. Dec. 9, 1994). There is nothing in the SAC to indicate that Pettiford's lawsuit was brought for any improper purpose. Filing a lawsuit to obtain monetary damages is not an improper purpose. Count II will be dismissed to the extent it is based on a lost abuse of process claim.

Defendants also contend that plaintiff has not adequately alleged that Pettiford committed malicious prosecution. Under Illinois law, the elements of a malicious prosecution claim are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." Swick v. Liautaud, 169 Ill. 2d 504, 662 N.E.2d 1238, 1242 (1996) (quoting Joiner v. Benton Community Bank, 82 Ill. 2d 40, 411 N.E.2d 229, 232 (1980)

- 34 -

(quoting Ritchey v. Maksin, 71 Ill. 2d 470, 376 N.E.2d 991, 993
(1978))). Plaintiff has sufficiently alleged the first four
elements. Plaintiff alleges that Pettiford brought suit against
him, that the lawsuit would have terminated in Remus's favor if
not for the Sheriff Defendants' destruction of evidence, and that
Pettiford's claims lacked any basis in fact. Since Pettiford
knew the claims were false, malice is sufficiently alleged. The
allegations also support that Remus suffered the requisite
injury. Damages for malicious prosecution must include something
beyond the usual expense, time, and annoyance of defending a
lawsuit. Miller v. Rosenberg, 196 Ill. 2d 50, 749 N.E.2d 946,
952 (2001); Cult Awareness Network v. Church of Scientology
International, 177 Ill. 2d 267, 685 N.E.2d 1347, 1351 (1997);
Rothman v. City of Chicago, 2003 WL 21148180 *6 (N.D. Ill.
May 16, 2003), aff'd by unpublished order, 145 F. App'x 177
(7th Cir. 2005). Loss of reputation is also insufficient to
support a malicious prosecution claim unless it affects one's
employment prospects. Rothman, 2003 WL 21148180 at *6; Niebur v.
Town of Cicero, 212 F. Supp. 2d 790, 815-16 (N.D. Ill. 2002).
Plaintiff alleges that defendants' destruction of evidence
necessary to defend himself caused a "loss of job advancement."
SAC ¶ 81. It may be inferred that the same type of loss was also
caused by Pettiford's lawsuit itself. Plaintiff has sufficiently
alleged the elements of malicious prosecution.

Remus has also sufficiently alleged that defendants'
destruction of evidence interfered with his defense of the
Pettiford lawsuit. Further consideration of Count II will be
limited to claims based on a lost malicious prosecution claim
against Pettiford and interference with Remus's ability to defend
against the Pettiford lawsuit.

It is unclear if Ryan's statute of limitations argument
is intended to apply to Count II or only Count I. To the extent
it applies to Count II, it is no basis for dismissing the
remaining aspects of Count II. There is no allegation in the SAC
conclusively stating that plaintiff was aware of the destruction
of evidence prior to March 14, 2003. Therefore, it is
unnecessary to consider whether the access to court claims would
accrue when the destruction of evidence was first discovered,
when the lawsuit with Pettiford was settled, or at some other
point during the Pettiford lawsuit.

Ryan contends he is entitled to qualified immunity.
However, well before the evidence allegedly was destroyed,
Harrell, 169 F.3d at 432, clearly established that it violates
the Constitution when state actors intentionally destroy evidence
that would be helpful to another's court case. Ryan and Sheahan
are not entitled to qualified immunity on Count II.

Count II will remain pending as against the Sheriff
Defendants to the extent it is based on the destruction of

evidence causing the loss of a malicious prosecution claim against Pettiford and a reduced ability to defend against the Pettiford lawsuit. It also remains pending against the County based on the County's duty to indemnify official capacity claims against the Sheriff.

Last, Ryan contends that his service of process is deficient. Initially, plaintiff received representations from Ryan's attorney that Ryan would provide a waiver of service of process. When the signed waiver was not received, plaintiff initially attempted to serve Ryan at his current place of employment, the Circuit Court of Cook County, Illinois. Plaintiff contended that Ryan attempted to avoid service of process, though part of the problem was that plaintiff was attempting to serve the wrong Judge Ryan. After the 120 days for service had expired, for good cause shown, plaintiff was granted an additional month to serve Ryan. See Fed. R. Civ. P. 4(m). Within the addition time allowed, plaintiff served Ryan at his home. Ryan's motion to dismiss raising this ground was filed after the 120 days had expired and before the extension of time to serve had been granted. By the time plaintiff answered the motion to dismiss, service had been accomplished and plaintiff asserted that the issue was moot. In his reply, Ryan argues that

he should be dismissed for insufficiency of service because the
extension of time was improvidently granted. Ryan argues that
the ease with which plaintiff was able to serve Ryan at home
shows plaintiff did not have good cause for not serving him
earlier. The present representations, however, do not dispute
that Ryan's attorney initially indicated that a waiver would be
signed or the problems plaintiff had attempting to serve Ryan at
his place of employment. The granting of the extension of time
was not improvident. Ryan will not be dismissed from this action
for insufficiency of process.

IT IS THEREFORE ORDERED that plaintiff's motion to strike
[69] is denied without prejudice. Defendants' motions to dismiss
[20, 23, 30] are granted in part and denied in part. Count I of
the Second Amended Complaint is dismissed to the extent it is
based on speech concerning the February 1999 incident. Count II
of the Second Amended Complaint is dismissed except to the extent
it is based on the destruction of evidence causing the loss of a
malicious prosecution claim against Pettiford and a reduced
ability to defend against the Pettiford lawsuit. Within 14 days,
defendants shall answer the remaining allegations of the Second
Amended Complaint. All discovery is to be completed by July 14,
2006. A status hearing will be held on April 5, 2006 at

11:00 a.m.  The Clerk of the Court is directed to amend the docket to substitute defendant <u>John</u> Stroger for <u>James</u> Stroger and substitute defendant Cook County Employees' and Officers' Annuity and Benefit Fund for defendant Cook County Pension Board.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED:  FEBRUARY  16  , 2006