IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD REMUS,

        Plaintiff,

v.                              No. 05 C 1495

MICHAEL SHEAHAN, Sheriff of
Cook County, Illinois, in his
individual capacity, COOK COUNTY
SHERIFF'S DEPARTMENT, JAMES
RYAN, individually, COUNTY OF
COOK, a unit of local government,
JOHN STROGER, Cook County
President, and COOK EMPLOYEES'
AND OFFICERS' ANNUITY
AND BENEFIT FUND,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Following a partial granting of defendants' motions to dismiss, plaintiff Richard Remus's remaining claims are (1) a First Amendment claim based on retaliation for political activity and seeking pension reforms and (2) an access to court claim based on destruction of evidence causing the loss of a malicious prosecution claim against Cello Pettiford and a reduced ability to defend against a lawsuit Pettiford had brought against plaintiff. See Remus v. Sheahan, 2006 WL 418654 (N.D. Ill.

Feb. 16, 2006). Presently pending is defendant Sheriff Michael Sheahan's motion to compel responses to interrogatories. Defendant also requests a more detailed privilege log. The dispute concerns whether certain communications that would otherwise be protected by the attorney-client privilege and/or the work product doctrine[1] are subject to discovery because the privileges have been waived by plaintiff as long as he continues to press the access to court claim.

Plaintiff was formerly employed as a superintendent at the Cook County Jail. Pettiford was a detainee at the jail. Pettiford and other detainees alleged they were subjected to improper force, including beatings. In a federal lawsuit, Pettiford alleged that plaintiff was one of the perpetrators. That case eventually settled, with the County making a monetary settlement. As between Pettiford and Remus, each party released any claim they had against the other. In the present lawsuit, Remus alleges that Sheriff Department defendants destroyed evidence that would have enabled him to defend himself successfully against the Pettiford lawsuit on the merits instead of settling and which would have also enabled Remus to bring a successful malicious prosecution claim against Pettiford.

---

[1] It is recognized that the work product doctrine is not a privilege. For simplicity in writing, though, both the attorney-client privilege and work product doctrine will henceforth be collectively referred to as privileges.

The interrogatories at issue concern the Pettiford litigation. Defendant complains the following interrogatories were not fully answered because plaintiff invoked attorney-client privilege and/or the work product doctrine. Although plaintiff provided answers, particularly to Interrogatory 12, he does not dispute that some information was withheld based on the privileges.

> 12. Describe the circumstances surrounding your settlement of the lawsuit brought by Cello Pettiford against you and others . . ., including, without limitation, why you agreed to settle the case, any consideration you provided to Pettiford or any other person under the terms of the settlement, and all facts supporting your allegation that Sheahan or the Sheriff's Department "forced" you into settlement, as alleged in Paragraph 41 of the Complaint.
>
> 13. Were you represented by counsel at the time you signed the Settlement Agreement and Mutual General Release in the Pettiford Litigation? If so, identify the substance of each communication you had with your counsel concerning whether or not you should sign the Settlement Agreement including, without limitation, the individuals involved, the date and form of each communication and the substance of each communication.
>
> 14. Do you contend that your litigation strategy in the Pettiford Litigation was in any way affected by any improper or wrongful conduct of Sheahan or the Sheriff's Department? If so, identify the manner in which your strategy was influenced, the decisions made as a result of any action of Sheahan and the Sheriff's Department, the reasons for each such decision, and the individuals involved in those decisions.
>
> * * *
>
> 16. Identify any communications you had with any other individual, including your counsel,

>relating to your consideration of bringing any claims against Pettiford or any of the defendants, including, without limitation, the individuals involved, the date and form of each communication and the substance of each communication.

The parties generally agree that the communications or documents at issue are either attorney-client communications or work product which ordinarily would not be subject to discovery. While disagreeing as to the particular circumstances under which waiver will be found, the parties do generally agree that a party may waive these privileges by asserting a claim that puts attorney advice at issue in the case. Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1175 n.1 (7th Cir. 1995) (dictum); Lorenz v. Valley Forge Insurance Co., 815 F.2d 1095, 1098 (7th Cir. 1987) (Indiana law); Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994); Beneficial Franchise Co. v. Bank One, N.A., 205 F.R.D. 212, 215-16 (N.D. Ill. 2001). Because the pending claims are based on federal law, federal law as to privilege and waiver applies, not the law of Illinois or any other state. Fed. R. Evid. 501. The parties have cited cases without regard to the law that is being applied. Often, however, even federal cases that involve state law claims apply the same rules as are applied under federal common law because there is no indication the law of the pertinent state is any different. See, e.g., Rhone-Poulenc, 32 F.3d at 861-62.

District courts in the Seventh Circuit have often followed the waiver rule set forth in Rhone-Poulenc, which is similar or identical to the Seventh Circuit's application of Indiana law in Lorenz. See, e.g., Schofield v. U.S. Steel Corp., 2005 WL 3159165 *5 (N.D. Ind. Nov. 28, 2005); Chamberlain Group v. Interlogix, Inc., 2002 WL 467153 *3 (N.D. Ill. March 27, 2002); Beneficial Franchise, 205 F.R.D. at 216; Adams v. Ardcor, 196 F.R.D. 339, 342-43 (E.D. Wis. 2000); Hucko v. City of Oak Forest, 185 F.R.D. 526, 529 (N.D. Ill. 1999) (psychotherapist-patient privilege); Makula v. Sanwa Business Credit Corp., 1997 WL 460935 *2-3 (N.D. Ill. Aug. 8, 1997). See also Dexia Credit Local v. Rogan, 231 F.R.D. 268, 275-76 (N.D. Ill. 2004) (holding that Illinois courts would follow the same waiver rule).

> . . . In Rhone-Poulenc, the Third Circuit specifically rejected the proposition that a party impliedly waives the privilege merely by asserting a defense that would make an attorney's advice relevant. Rather, the Third Circuit held that "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." 32 F.3d at 863. In explaining its ruling, the Rhone-Poulenc court used the example of a patent case in which a defendant denies the charge of willful infringement. The Court explained that while the advice of the alleged infringer's lawyer may be "relevant to the question of whether the infringer acted with a willful state of mind, . . . the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice." Id.

> Rhone-Poulenc reflects an effort to strike a
> balance between the principle that waivers of the
> attorney-client privilege are to be narrowly
> construed, see, e.g., Katz v. AT & T, 191 F.R.D.
> 433, 440 (E.D. Pa. 2000), and the principle that
> a party should not be able to selectively
> disclose privileged information that it believes
> works to that party's advantage, while concealing
> the rest. McLaughlin v. Lunde Truck Sales, 714
> F. Supp. 916, 918 (N.D. Ill. 1989) ("the
> attorney/client privilege may not be manipulated
> to the advantage of the party asserting the
> privilege").

Beneficial Franchise, 205 F.R.D. at 216.

Relying on this waiver rule, plaintiff contends he has not waived the privileges because he does not intend to rely on any communication he had with his attorney. Plaintiff represents that he himself made the decision to settle the Pettiford litigation and can set forth the basis for his decision without referencing any privileged communications.

Plaintiff contends that all he need show to prove his access to court claim is "(a) the official acts frustrating litigation and (b) the underlying claim that was lost or interfered with." Remus, 2006 WL 418654 at *9. He contends it is unnecessary to rely on any attorney communication to prove those elements and that he has no intention of relying on any privileged communications. Another element that must be proved, however, is a causal relationship between the improper destruction of evidence and plaintiff being forced to settle the Pettiford litigation. See id. at *13; Christopher v. Harbury,

536 U.S. 403, 414, 420 n.19 (2002); Marshall v. Knight, ___ F.3d ___, 2006 WL 1084267 *3 (7th Cir. April 26, 2006); Snyder v. Nolen, 380 F.3d 279, 295 (7th Cir. 2004). In order to prove that causal relationship, litigation strategy decisions made during the Pettiford litigation will have to be examined in order to determine the effect that the destroyed evidence had on the litigation and Remus's decision to settle both the claims against him and any counterclaims he had against Pettiford.

Plaintiff's argument ignores that he has a type of claim (denial of access to court) for which prior litigation is a central contention. The parties have not cited, and this court has not found, any waiver of privilege case that involves a denial of access to court claim. Rhone-Poulenc and its progeny, though, recognize that certain types of claims, by their very nature, put attorney-client communications at issue when brought. Legal malpractice claims are repeatedly referred as being a type of claim that waives the privileges when brought. See Rhone-Poulenc, 32 F.3d at 863; Chamberlain, 2002 WL 467153 at *3. Like a malpractice claim, an access to court claim generally puts at issue the prior litigation. In Remus's situation, whether any evidence that may be proven to have been destroyed actually affected the outcome of the Pettiford litigation is likely to be a contested issue. By bringing his access to court claim, Remus has affirmatively put at issue the underlying litigation,

including attorney-client communications and work product that occurred during that litigation. To the extent any such communications or documents are responsive to interrogatories 12, 13, 14, and 16, plaintiff must disclose them. The privileges that existed in the prior litigation have been waived by bringing a denial of access to court claim. Once the settlement with Pettiford was consummated, though, any subsequent discussions with Remus's current attorneys (who also represented him in the Pettiford litigation) would not be subject to this waiver. The only exception, to the extent responsive to a discovery query in the present litigation, would be any post-settlement discussions Remus may have had regarding the possibility of seeking to vacate the Pettiford settlement or judgment.

Since plaintiff is being required to disclose all attorney-client communications and work product from the prior litigation that is responsive to the interrogatories at issue, there should be no need to provide a privilege log of undisclosed items. No opinion is expressed regarding the adequacy of the privilege log that had been provided. It is assumed that plaintiff desires to continue to pursue the access to court claim. Alternatively, plaintiff may instead choose to drop this claim. If he does, there would be no waiver of the privileges.

IT IS THEREFORE ORDERED that defendant Sheahan's motion to compel [96] is granted. By June 5, 2006, plaintiff shall supplement his response to Interrogatories 12, 13, 14, and 16.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: MAY 23, 2006